[Civ. No. 52180. First Dist., Div. Five. June 6, 1985.]

CITY OF OAKLAND, Cross-complainant and Appellant, v.
DELCON ASSOCIATES, Cross-defendant and Respondent.

## COUNSEL

Dennis Zaragoza, Donald R. Wild, Wild & Jeffrey and Charles Bond for Cross-complainant and Appellant.

David J. Garthe, Boornazian, Jensen & Garthe and Scott DeVries for Cross-defendant and Respondent.

## OPINION

**HANING, J.**—Appellant City of Oakland (City) appeals from a summary judgment awarded to respondent Delcon Associates, Inc., in appellant's action seeking indemnity for personal injury damages it paid to respondent's employee. We affirm.

The following facts are undisputed: In 1976, appellant requested several private contractors, including respondent, to submit bids on a job to repair the basketball gym in Tassafaronga Park, a city-owned and maintained recreational area. Respondent submitted its bid on September 10, 1976. The bid was signed by respondent's secretary, Donald MacDonald. On Septem-

ber 20, 1976, appellant sent respondent a written purchase order to make the repairs. The purchase order was signed by appellant's purchasing manager, but was never signed by any representative of respondent.

The reverse side of the purchase order prepared by appellant is entitled "Terms and Conditions." Section 1 of those terms and conditions states, in relevant part: "This purchase order shall constitute the agreement." Section 11 is an indemnity clause which provides: "For supplies and materials which require installation, or other labor or services and not under formal contract, the seller hereby acknowledges and agrees with the city that in the performing of any labor or services required to conform with this purchase order, the seller acts as an independent contractor and not as an employee or agent of the City; and that, further, as such seller and independent contractor he indemnifies against and saves harmless the City from any and all claims for damages arising out of the performance of such labor and services and the performance of the requirements hereof."

While removing a section of gutter from the side of the gym, plaintiff Jack Kozyn, a Delcon employee, fell from a ladder and was injured. He sued the City for personal injuries. City settled Kozyn's case for $245,000 and subsequently brought this indemnity suit against Delcon to recover that amount.

On cross-motions for summary judgment, the trial court ruled that the indemnity clause in the purchasing order either was not executed, or was not a written agreement within the meaning of Labor Code section 3864,[1] and granted Delcon's motion for summary judgment. Subsequently, the court heard City's motion for reconsideration and denied it, maintaining the summary judgment in favor of Delcon.

■ The principal issue is the interpretation of the word "executed" contained in section 3864. That section states: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do *executed prior to the injury.*" (Italics added.)

■ The purpose of the statute is to eliminate an employer's liability under an equitable or implied indemnity theory when its employee is injured during the course and scope of employment due to the negligence or partial

---

[1]Unless otherwise indicated, all further references to section 3864 are to the Labor Code.

negligence of a third party. Section 3864 restricts the employer's responsibilities to those imposed by the workers' compensation laws and insulates it from indemnity claims unless they are based on an express contract of indemnity executed by the employer prior to the injury. (See *Pacific Gas & Elec. Co. v. Morse* (1970) 6 Cal.App.3d 707 [86 Cal.Rptr. 7].)

The recent case of *Lockheed Missiles & Space Co.* v. *Gilmore Industries, Inc.* (1982) 135 Cal.App.3d 556 [185 Cal.Rptr. 409], explains the statutory requirement that a contract to indemnify be "executed." In that case, Lockheed sent a written purchase order to Gilmore to make repairs on a shaker-amplifier system it had purchased from Gilmore. Section 1 of the order provided in pertinent part: "'ACCEPTANCE. This order becomes the exclusive agreement between the parties for the supplies, subject to the terms and conditions hereof, when accepted by acknowledgment or commencement of performance.'" (*Id.*, at p. 557.) Section 9 of the purchase order prepared by Lockheed was an indemnity clause which stated: "'In the event Seller, its employees, agents, subcontractors and/or lower-tier subcontractors enter premises occupied by or under the control of Buyer in the performance of this order, Seller shall indemnify and hold harmless Buyer, its officers and employees from any loss, cost, damages, expense or liability by reason of property damage or personal injury of whatsoever nature or kind arising out of, as a result of, or in connection with such performance occasioned in whole or in part by the actions or omissions of Seller, its employees, agents, subcontractors and/or lower-tier subcontractors.'" (*Id.*, at p. 558.)

While testing the shaker-amplifier system, a Gilmore employee, Donald Wichman, was electrocuted and died. Wichman's heirs sued Lockheed. Lockheed settled the case and then brought suit against Gilmore for indemnity. The lower court granted summary judgment in favor of Gilmore because no representative of Gilmore had signed the order prior to Wichman's death and, therefore, pursuant to section 3864, Gilmore had no duty to indemnify Lockheed. (*Lockheed Missiles & Space Co.* v. *Gilmore Industries, Inc., supra,* 135 Cal.App.3d at p. 558.)

The Court of Appeal affirmed, stating: "[I]t is well settled that in order to be 'executed' an agreement must be fully performed on both sides." (*Lockheed Missiles & Space Co.* v. *Gilmore Industries, Inc., supra,* 135 Cal.App.3d at p. 559.) Lockheed contended that a formal signature to the agreement to indemnify was unnecessary since the agreement had been "executed" by its acceptance. Noting that the record was silent as to whether the purchase agreement had been fully performed, the court concluded that because Wichman had died in the process of making repairs, it was "un-

likely that repairs had been completed or that [Gilmore] had been compensated for performing such repairs prior to Wichman's death. Accordingly, it is extremely doubtful that the purchase agreement had been performed on both sides." (*Id.*, at p. 560.) Turning to the definition of the term "executed" in section 3864, the *Lockheed* court held that "[e]ven if the purchase agreement had been fully 'executed,' we do not believe that this was the type of executed agreement intended by section 3864. If we were to adopt appellants' position it would result in the rule that any written contract containing an indemnity provision would be fully enforceable upon completion of performance by both parties regardless of whether the proposed indemnifying party had signed, read or even received the written contract. This could not have been the intent of the statute." (*Lockheed Missiles & Space Co.* v. *Gilmore Industries, Inc., supra,* 135 Cal.App.3d at p. 560. Citing *Solano Concrete Co.* v. *Lund Constr. Co.* (1976) 64 Cal.App.3d 572 [134 Cal.Rptr. 552], the *Lockheed* court declared that "an indemnity agreement must be in writing and signed by the parties." (*Id.*, at p. 559.)

The facts in the instant case are virtually identical to those in *Lockheed.* Nevertheless, appellant attempts to distinguish that case on the grounds that the present case involves competitive bidding, whereas *Lockheed* did not; the agreement in this case comprised a "series" of documents, as opposed to the single purchase order in *Lockheed;* and, unlike *Lockheed,* there was evidence in the instant record that a representative of respondent read and understood the indemnity provision included in the purchase order agreement.

We find appellant's first two contentions unpersuasive. Appellant cites no authority, and we have discovered none, supporting either of these asserted grounds for distinguishing *Lockheed.* The Labor Code's requirement that an indemnity agreement be in writing and executed prior to the injury means executed by the party sought to be bound—the employer. We perceive no logical basis for such distinctions.

Appellant's third argument is that triable issues of fact existed which prevented the award of summary judgment. In its motion for reconsideration, appellant proffered a declaration from respondent's former secretary, MacDonald, indicating that he had in fact read and understood the indemnity provision in the purchase order. MacDonald stated that he did not strike the provision (as he frequently did) because he feared that appellant would then refuse to award respondent the contract. Nevertheless, the record is uncontroverted that no representative of respondent ever signed the agreement prior to Kozyn's injury.

While it may seem unfair that respondent can avoid obligations which its representative read and understood, section 3864's requirement that an in-

demnity provision be "executed" before it can be considered binding is clear and unequivocal. (*Lockheed Missiles & Space Co.* v. *Gilmore Industries, Inc., supra,* 135 Cal.App.3d at p. 559.) It is not unreasonable for the Legislature to impose the relatively light burden of obtaining an executed indemnity agreement on the party who will benefit from it.[2] That burden is set forth in clear and simple language and should be easily understood; if a third party intends to bind an employer to an indemnification agreement, it must obtain the employer's signature prior to the injury. By tampering with the statutory language, we would be opening a Pandora's box of exceptions which would serve only to create confusion and needless litigation. Accordingly, because the written purchase order was never executed by respondent, we conclude it was not bound by the indemnity clause.

The judgment is affirmed.

Low, P. J., and King, J., concurred.

---

[2]If appellant insists upon indemnity agreements of this type, it should specify such requirements in its requests for bids so bidders will clearly understand the risks appellant asks them to undertake. Such conditions may well affect the bids.